UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| KENTUCKY ASSOCIATION | ) | |
| OF COUNTIES WORKERS' | ) | |
| COMPENSATION FUND, | ) | |
| | ) | Civil No. 14-54-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CONTINENTAL CASUALTY | ) | **ORDER** |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Kentucky Association of Counties Workers' Compensation Fund ("KACo") seeks a declaration of rights concerning an excess workers' compensation policy issued by Continental Casualty Company to KACo.  Specifically, KACo asserts that Continental must cover KACo's excess liability for Pamela Thompson's work-related cumulative trauma injury.  Continental insured KACo from July 1, 1994 to July 1, 2000, and KACo argues Thompson's injury manifested during that time period.  Continental disputes its liability, arguing Thompson's injury manifested in February or March of 1994 before Continental provided coverage.  After careful review of the record, the Court finds a genuine issue of material fact exists as to when Ms. Thompson's injury manifested, under the definition articulated by the Court below.  Therefore, for the following reasons, the Court DENIES both parties' motions for summary judgment.

**I**

Kentucky Association of Counties Workers' Compensation Fund ("KACo") is a workers' compensation self-insured group created to allow a collaboration of Kentucky government employers to self-insure against their workers' compensation liabilities.  From 1986 to 2000, the group insured, among other employers, the Greenup County Fiscal Court.  KACo was self-insured up to $500,000 per occurrence, and then retained excess workers' compensation insurance from outside carriers to cover any outstanding liabilities.  From July 1, 1993, to July 1, 1994, Transamerica Insurance Company insured KACo's excess liabilities.  [*See* R. 27-2.] Subsequently, from July 1, 1994, to July 1, 2000, Continental Casualty Company was KACo's insurer.  [*See* R. 27-3; R. 27-4; R. 27-5.]

Pamela Thompson was an employee of the Greenup County Fiscal Court from 1986 to 2000, during which time she performed data entry and answered telephone calls.  In 1994, she began developing chronic severe neck pain.  Her condition worsened in 1998, and she ultimately required surgery and other treatments.  As a result of the pain, Ms. Thompson quit her job on April 11, 2000, and filed for workers' compensation.  On July 25, 2001, the Administrative Law Judge handling Thompson's case granted her claim for total disability income benefits.  The ALJ cited April 11, 2000, as Thompson's injury date.

After the ALJ's resolution of the case, KACo began paying workers' compensation benefits to Ms. Thompson as required by the award.  As of September 2013, KACo's self-insured retention of $500,000 was exhausted.  KACo subsequently sought recovery from Continental for Ms. Thompson's award expenses above and beyond the $500,000 retention. Through its claim consultant and counsel, Continental denied liability for Ms. Thompson's claim

and asserted that, according to a 1998 amendment to its insurance policy, Thompson's injury occurred outside of the policy period during which Continental covered KACo.

Under the previous version of Continental's insurance policy, an occurrence of an occupational disease (which includes gradual injuries like Ms. Thompson's) was deemed to take place on the date upon which *the employee was last exposed at work to the disease-causing conditions*. In 1998, this method of dating the occurrence of an injury was amended. The relevant portion of the policy now reads "Occupational disease sustained by each employee shall be deemed to be a separate occurrence for each injured employee and occurrence shall be deemed to take place *on the date the occupational disease is first manifested*." [R. 28-2 at 13, emphasis added]. The term "manifested" is not defined in the original Continental policy or in the amendment.

Continental argues that Thompson's injury manifested prior to July 1, 1994, before it insured KACo. Continental relies on the deposition testimony of Thompson as well as a letter from a physician as evidence that Thompson's symptoms first developed in February or March of 1994. KACo vigorously disputes Continental's conclusion. KACo alleges Thompson's injury manifested during Continental's policy period, because the severe injuries which ultimately became the basis for her workers' compensation award were not diagnosed until well after July 1, 1994, when Continental's liability began.

KACo filed suit in Franklin County, Kentucky Circuit Court, seeking a declaration of rights that Continental is liable for the excess of Ms. Thompson's award above and beyond the $500,000 KACo has already paid. Continental removed the action to this Court on the basis of diversity of citizenship jurisdiction. Both parties have filed motions for summary judgment and

responses to the respective motions.  The Court now considers the parties' arguments regarding

Continental's liability.

## II

## A

When sitting in diversity, a federal court applies the substantive law of the state in which

it sits.  *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  However, when considering

summary judgment arguments, a federal court applies the standards of Federal Rule of Civil

Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc.*

*v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991).  *See Gafford v. Gen. Elec. Co.*, 997 F.2d

150, 165 (6th Cir. 1993).  Under Rule 56, summary judgment is appropriate where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact's materiality is

determined by the substantive law, and a dispute is genuine if "the evidence is such that a

reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*,

477 U.S. 242, 248 (1986).  Summary judgment is inappropriate where there is a genuine conflict

"in the evidence, with affirmative support on both sides, and where the question is which witness

to believe."  *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).  "Courts may not

resolve credibility disputes on summary judgment."  *Id.*

## B

For purposes of jurisdiction, KACo is a citizen of Kentucky and Continental is a citizen

of Illinois.  [R. 1.]  Further, the amount in controversy exceeds $75,000.  [*Id.*]  Thus, this Court

has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and must apply the laws of the state of

Kentucky concerning insurance policies to determine the scope of Continental's coverage.  *See*

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008).  In doing so, this Court must

follow the decisions of the highest court of Kentucky and may consider the appellate court's

decisions as persuasive.  *Id.*  In Kentucky, "the interpretation of insurance contracts is a matter of

law for the Court" to decide, and is appropriately determined through summary judgment when

there are no other factual issues in dispute.  *West Am. Ins. Co. v. Prewitt*, 401 F. Supp. 2d 781,

783 (E.D. Ky. 2005), aff'd, 208 F. App'x 393 (6th Cir. 2006).

Under Kentucky law, "[e]very insurance contract shall be construed according to the

entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or

modified by any rider, indorsement, or application attached to and made a part of the policy."

Ky. Rev. Stat. § 304.14-360.  When interpreting an insurance contract, the policy "must be

construed without disregarding or inserting words or clauses, and 'seeming contradictions should

be harmonized if reasonably possible.'"  *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*,

82 S.W.3d 869, 875-76 (Ky. 2002) (quoting Am. Jur. 2d, *Insurance*, § 275).

Kentucky courts have long recognized that for public policy reasons, insurance contracts

"should be liberally construed and any doubts resolved in favor of the insured."  *Dowell v. Safe*

*Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006).  Courts should seek to interpret the policy

according to the intent of the parties at the time they entered into the contract.  *Nationwide Mut.*

*Ins. Co. v. Nolan*, 10 S.W.3d 129, 132 (Ky. 1999).  Where ambiguities in the policy exist, they

are to be construed in favor of the insured and so as to effectuate coverage.  *Wolford v. Wolford*,

662 S.W.2d 835, 838 (Ky. 1984); *see also St. Paul Fire & Marine Ins. Co. v. Powell-*

*WaltonMilward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994) (stating that when provisions in an

insurance policy conflict, "the contract shall be resolved to afford maximum coverage"); *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) ("Kentucky has consistently recognized that an ambiguous policy is to be construed to effectuate the purpose of indemnity.").

Despite a policy inclination of favoring the insured, however, "'[t]he rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the plain meaning and/or language of the contract.'" *Scottsdale*, 546 F.3d at 564 (quoting *St. Paul*, 870 S.W.2d at 226). "Insurance policies, like statutes, must receive a sensible construction." *Id.* Indeed, Kentucky courts have recognized that a "liberal interpretation [of an insurance policy] is not synonymous with a strained one." *K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751, 753 (Ky. App. 2005). Thus, "courts should not rewrite an insurance contract to enlarge the risk to the insurer." *St. Paul*, 870 S.W.2d at 226-27. Rather, where the language of the policy is not ambiguous, it should not be construed to mean anything other than what it says.

## C

In this case, the parties dispute the meaning of the term "manifested" in the 1998 amendment to the Continental insurance policy. Defining the term is necessary to the resolution of the parties' summary judgment motions and the ultimate declaration of rights issue. Without understanding the meaning of "manifested," neither the parties nor the Court can determine whether Ms. Thompson's injury occurred during or outside of the policy period for which Continental insured KACo. The Court, therefore, must first determine the proper meaning of the term. As explained above, the Court follows Kentucky law in doing so. Subsequently, the Court

considers whether any genuine issues of material fact exist regarding when Ms. Thompson's injury manifested.

**1**

First, the Court decides the meaning of "first manifested" in the insurance policy. As prefaced above, in 1998 Continental amended its policy to KACo, changing the definition of when an injury occurs for the purposes of Continental's liability. Before 1998, an occupational injury occurred "on the date upon which the employee is last exposed at work to conditions allegedly causing such occupational disease." [R. 28-2 at 15.] In Ms. Thompson's case, this date would clearly be April 11, 2000, the date Thompson voluntarily left employment with the Greenup County Fiscal Court. Accordingly, Continental would be liable for the excess workers' compensation award, because Continental provided excess coverage to KACo for occupational injuries occurring during the policy period—from July 1, 1994, through July 1, 2000. The question before the Court, however, is more difficult in light of the 1998 amendment. Post-1998, an occupational injury is deemed to have occurred "on the date the occupational disease is first manifested." [*Id.* at 13.] The term "manifested" is not defined, and both parties have presented their suggested definitions of the word to the Court in their respective summary judgment motions.

**a**

Between Continental's motion for summary judgment and its response to KACo's motion, Continental sets forth two main proposals for defining "manifested." First, Continental argues that, even though the term is not defined in the insurance policy, it is not an ambiguous term under Kentucky law. Instead, "first manifested" has already been defined by Kentucky courts and, thus, has a plain, ordinary meaning the Court should follow. For support, Continental

cites *Inter-Ocean Ins. Co. v. Engler*, 632 S.W.2d 459, 460 (Ky. Ct. App. 1982), in which the court found a patient's tuberculosis for purposes of health insurance coverage to manifest when "sufficient symptoms of the disease are present within the specified period that a physician would be led to diagnose the disease." *Engler*, 632 S.W.2d at 461. Continental asserts that where a purported ambiguity may be resolved by giving a term its plain meaning, the court need not rely on the doctrine of reasonable expectations or construe the alleged ambiguity against the insurer. *See Sec. Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d 1001, 1007 (6th Cir. 1995).

Should the Court choose not to rely on *Engler*, Continental offers another possible method for defining "manifested" in the 1998 policy amendment. According to Continental's motion for summary judgment, "[i]n cumulative injury cases, the insurance carrier on the risk when the claimant first began to experience symptoms is liable for the claimant's entire benefits." [R. 27 at 5.] As support for this argument, Continental relies upon a Kentucky Supreme Court dispute between two insurance carriers. *See Am. Printing House for the Blind ex rel. Mut. Ins. Corp. of Am. v. Brown*, 142 S.W.3d 145, 148-49 (Ky. 2004). In *Brown*, two successive insurance carriers MICOA and KESA disagreed as to which carrier was liable for a claimant's benefits. The claimant suffered from a gradual onset of carpal tunnel syndrome, and the parties disputed when her injury for purposes of workers' compensation liability became manifest under certain Kentucky workers' compensation statutes. MICOA asserted that the claimant's injury could not become manifest until a physician informed her that she had a work-related injury. *Brown*, 142 S.W.3d at 148. MICOA alleged that the same date triggering the notice and limitations requirements for workers' compensation claims should govern the dispute. The Kentucky Supreme Court, however, disagreed and found the claimant's injury manifested on

8

an earlier date.  The *Brown* court reasoned that, although the claimant did not receive a work-related diagnosis until January 11, 2001, her injury manifested on June 5, 2000, when "she began to experience pain in her wrists and immediately informed the employer's safety coordinator that she thought her symptoms were caused by her repetitive work."  *Id.* at 147-48.  The court held it was "undisputed that the claimant sustained work-related trauma and that harmful changes from the trauma were symptomatic on June 5, 2000. . . . [N]othing prohibits a worker who thinks she has sustained a work-related gradual injury from reporting it to her employer before the law requires her to do so, and nothing prevents her from reporting an injury that she thinks is work-related before a physician confirms her suspicion."  *Id.* at 148-49.  According to the *Brown* case, Continental argues, Ms. Thompson's injury manifested when she first began experiencing symptoms, even though the medical records indicate she did not yet have an official work-related diagnosis.

**b**

KACo argues *Engler* and *Brown* are both inapplicable and offers several other approaches to defining the term.  First, KACo asserts, to the extent the word "manifested" is ambiguous, the reasonable expectations doctrine controls to resolve the ambiguity in favor of KACo.  *See Aetna Cas. & Surety Co. v. Commonwealth*, 179 S.W.3d 830, 837 (Ky. 2005) ("The rule of interpretation known as the 'reasonable expectations doctrine' resolves an insurance policy ambiguity in favor of the insured's reasonable expectations."); *see also State Mut. Life Assur. Co. of Worcester, Mass. v. Heine*, 141 F.2d 741, 746 (6th Cir. 1944) ("The rule prevails in Kentucky that in the interpretation of all insurance policies, the language must be construed most favorably toward insured and if the language is susceptible to two constructions, one of which will enforce payment of the benefits and the other excuse the company, the former should always be adopted.").

9

Next, KACo looks to a dictionary's definition of the word.  KACo cites to *Webster's New World Dictionary of American English*, Third College Edition, 1988, as defining "manifest" to mean "to make clear or evident; show plainly; reveal; evince."

In addition, KACo provides the Court with a series of cases which KACo argues define "date of manifestation" as "the date when the worker knew or should have known he has [the condition], or the date that [the condition] is medically diagnosed, whichever came first."  [R. 28-1 at 10, *citing, e.g., Ins. Co. of North America v. Forty-Eight Insulations, Inc*., 633 F.2d 1212, 1216-17, 1220 n. 13 (6th Cir. 1980).]  The *Forty-Eight Insulations* case concerned a dispute over which insurance carrier was liable for a claimant's asbestosis.  The Sixth Circuit noted two theories of construction used to construe uniform provisions in Comprehensive General Liability insurance policies: the manifestation theory and the exposure theory.  Under the manifestation theory of liability, the date of manifestation was "the date when the worker knew or should have known he has asbestosis, or the date that asbestosis is medically diagnosed, whichever came first." *Forty-Eight Insulations*, 633 F.2d at 1216-17.  Ultimately, the *Forty-Eight Insulations* court did not adopt the manifestation theory of liability for products liability asbestosis claims. *Id.* at 1223.  KACo relies on the case, however, not for its ultimate conclusion, but to demonstrate the way "manifested" has been defined and explained by the Sixth Circuit in a different context.

**c**

After reviewing Kentucky state law on the matter, the Court finds *American Printing House for the Blind v. Brown* to be the most on point.  142 S.W.3d 145 (Ky. 2004).  While *Inter-Ocean Ins. Co. v. Engler* defines the similar phrase "first manifesting itself" in the context of health insurance exclusion clauses, *Brown* involves a more analogous, workers' compensation

situation.  The *Brown* court found the manifestation date to be the date on which it was "undisputed that the claimant sustained work-related trauma and that harmful changes from the trauma were symptomatic."  *Id.* at 148.  The Court uses *Brown* to guide its interpretation of the Continental policy language in the case at hand.

The Court recognizes the difficulties intrinsic in determining when a cumulative trauma injury manifests.  In certain situations, the manifestation date of a work-related injury is clear: a railroad employee drops a tool on his foot while maintaining the track, or a manual laborer lifts a heavy item and immediately experiences back pain as a result of his efforts.  In those cases, the link between the individuals' pain and their employment is apparent.  Cumulative trauma situations like Pamela Thompson's, however, are far less obvious.  For example, an employee may experience minor aches and pains leaving work one day.  Those aches and pains might be work-related, but they could also stem from recent exercise, or a restless night's sleep.  Over time, however, those aches and pains could continue to progress, culminating in symptoms that ultimately constitute an injury sufficient for a workers' compensation claim.   Where along the spectrum the injury manifests is the question facing the Court, and a measurable rule is needed for situations exactly like the one raised by this lawsuit.

Thoughtful consideration of *Brown* suggests that causation is the key piece of the analysis when determining a manifestation date.  In order for an injury to truly manifest, there must be some link between the individual's symptoms and the employment such that the individual could recognize her employment is causing the pain.  This causal link was present in *Brown*, where the Kentucky Supreme Court found the manifestation date of the claimant's injury to be the date on which "she began to experience pain in her wrists and immediately informed the employer's safety coordinator *that she thought her symptoms were caused by her repetitive*

work." *Id.* at 147 (emphasis added).  *See also Brummitt v. Southeastern Kentucky Rehabilitation Industries*, 156 S.W.3d 276, 282 (Ky. 2005) (J. Cooper, dissenting) ("[O]ur cases do not require that the worker be aware of the precise diagnosis of the disabling condition, so long as the worker is aware of the existence of the condition *and* the fact that it is work related.") (emphasis added).  The Court finds the appropriate date of manifestation, then, to be the date on which the claimant recognizes such a causal connection.

Accordingly, the manifestation date cannot be the date on which the injured party first begins experiencing symptoms if nothing links those symptoms to the injured's employment. Such a rule falls short of what *Brown* requires.  Further, the manifestation date need not be the date on which the injured party finally leaves her job because of the injury.  A requirement to cease working altogether would over-extend *Brown*.  Importantly, the required causal connection need not be established by a physician's diagnosis, although that is certainly a way it could be established.  The *Brown* court determined that an employee need not wait to receive an official diagnosis where she already knows her symptoms are work-related.  *See* 142 S.W.3d at 149. Therefore, a causal link made by the employee herself, as in *Brown*, is capable of triggering the manifestation date.  However, the Kentucky Supreme Court has also indicated that, in the worker's compensation notice and limitations context, an employee suffering from a gradual injury should not be required to self-diagnose a cumulative trauma injury.  *Hill v. Sextet Mining Corp.*, 65 S.W.3d 503, 507 (Ky. 2001).  The *Hill* court considered whether a claimant suffering from a gradual cervical spine injury gave proper notice to his employer.  The Kentucky Supreme Court reasoned that "[m]edical causation is a matter for the medical experts and, therefore, the claimant cannot be expected to have self-diagnosed the cause of the harmful change to his cervical spine as being a gradual injury . . . ." *Id.*  Accordingly, an employee *may* recognize

12

causation and, thus, trigger the manifestation date before receiving an official diagnosis, but an employee is not *required* to do so.

The Court's emphasis on causation is supported not only by the previously discussed Kentucky workers' compensation opinions, but also by federal law considering manifestation in other contexts. For example, in the *Forty-Eight Insulations* case cited by KACo, the Sixth Circuit considered the applicable theory of liability to impose in products liability asbestosis cases. 633 F.2d 1212 (1980). In doing so, the court articulated the manifestation theory of liability as follows: "The date of manifestation is the date when the worker knew or should have known he has asbestosis, or the date that asbestosis is medically diagnosed, whichever came first." *Id.* at 1216. In light of the Kentucky Supreme Court's *Hill* opinion, the Court will not here impose a "should have known" requirement, requiring an employee to reasonably self-diagnose her gradual injury. *See Hill*, 65 S.W.3d at 507. Nonetheless, the Court finds the definition of manifestation in asbestosis products liability claims to be persuasive and to confirm the propriety of an emphasis on causation. For a cumulative trauma injury to manifest, there simply must be some apparent relationship between the employment and the employee's symptoms such that a doctor diagnosed the injury, *see id.*, or such that the employee is confident enough in the causation to take action on her own, before a physician's diagnosis. *See Brown*, 142 S.W.3d at 148-49.

**2**

Now that the Court has determined the meaning of the term "manifested" in the Continental insurance policy, the Court considers whether summary judgment is appropriate in this case. The parties have indicated to the Court that they do not believe any genuine issues of material fact exist, but after reviewing the evidence filed in the record, the Court disagrees. The

Court has thoroughly considered all of the exhibits attached to the parties' filings and, upon this review, concludes that a reasonable juror could find Ms. Thompson's injury manifested either before or after Continental began insuring KACo.  Because of this, the Court denies both summary judgment motions.

As explained above, the key to determining the manifestation date is causation.  Some evidence in the record plainly suggests Ms. Thompson had no recognition of a causal link until April 12, 2000.  Ms. Thompson testified that, on that date during her medical appointment with Dr. Tibbs, she first understood her symptoms to be work-related.  [R. 27-1 at 15, ¶¶ 11-18.] Seemingly, then, April 12, 2000, would be the manifestation date.  This conclusion is bolstered by another statement in Thompson's deposition, where she indicates that she began having severe neck pain in 1994 but "[she] just tolerated the pain, because [she] wasn't sure why [she] had the pain."  [R. 27-1 at 3, ¶¶ 16-17.]  Further, a January 11, 2000, physical therapy record states, "Thompson is a 46 year old female who relates 5 years ago, she began experiencing neck pain *for no apparent reason*."  [R. 28-6 at 1, emphasis added; *see also* R. 28-6 at 33.]

Other evidence in the record, however, indicates Ms. Thompson may have had some understanding of a causal link prior to Dr. Tibbs' April 2000 diagnosis.  Various medical records suggest she may have recognized at least some connection between her pain and increased phone duties at work, and that she expressed that recognition to certain medical providers.  [R. 27-6 at 2 ("Ms. Thompson is a 46-year-old married white female who reports that about February or March 1994, *she was doing a lot of phone work and developed cervical pain.*") (emphasis added); R. 28-8 at 1 ("This is a 47 year old deputy clerk who states that *she initially began to have problems in 1994 when she was 'very busy on the phones due to lay off at work.'*") (emphasis added).]

14

These latter statements seemingly contradict Ms. Thompson's assertion that she did not recognize causation until April 12, 2000.  The medical records are especially puzzling because, as KACo's motion for summary judgment points out, they likely relate what Ms. Thompson personally  told medical providers about her understanding of her physical condition at the time she sought treatment.  [*See* R. 28-1 at 4-5.]  A reasonable jury could find Thompson's injury did not manifest until April 12, 2000, after her appointment with Dr. Tibbs, or it could find she recognized a causal link between her employment and pain so as to trigger the manifestation date as early as the spring of 1994 when she first began experiencing the pain.  Because there is a genuine conflict in the evidence with affirmative support on both sides, summary judgment is inappropriate.  *See Dawson*, 528 F. App'x at 452.  The Court may not, at this stage of the litigation, determine whether Thompson's injury manifested during the time Continental insured KACo so as to hold Continental liable for the excess costs of Ms. Thompson's workers' compensation claim.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiff KACo's Motion for Summary Judgment [**R. 28**] as well as the Defendant Continental Casualty Company's Motion for Summary Judgment [**R. 27**] are both **DENIED**.

This the 8th day of January, 2016.

Gregory F. Van Tatenhove
United States District Judge

15